1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MELANIE L. WEBER,

                              Plaintiff,

        v.

CAROLYN W. COLVIN. Commissioner of
Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05311-RJB-KLS

REPORT AND RECOMMENDATION

Noted for April 12, 2013

Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 29, 2009, plaintiff filed an application for disability insurance benefits and

another one SSI benefits, alleging in each application disability beginning March 22, 2008, due

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

REPORT AND RECOMMENDATION - 1

to back and stomach pain. See Administrative Record ("AR") 25, 124, 126, 157.  Both

applications were denied upon initial administrative review on July 9, 2009, and on

reconsideration on July 31, 2009. See AR 25, 73, 79, 82.  A hearing was held before an

administrative law judge ("ALJ") on April 30, 2010, at which plaintiff, represented by counsel,

appeared and testified, as did a vocational expert. See AR 42-68.

      In a decision dated June 29, 2010, the ALJ determined plaintiff to be not disabled. See

AR 25-38.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals

Council on February 21, 2012, making the ALJ's decision defendant's final decision. See AR 1;

see also 20 C.F.R. § 404.981, § 416.1481.  On April 19, 2012, plaintiff filed a complaint in this

Court seeking judicial review of defendant's final decision. See ECF #3.  The administrative

record was filed with the Court on July 3, 2012. See ECF #11.  The parties have completed their

briefing, and thus this matter is now ripe for the Court's review.

      Plaintiff argues defendant's final decision should be reversed and remanded for an award

of benefits, or in the alternative for further administrative proceedings, because the ALJ erred:

(1) in evaluating the medical evidence in the record; (2) in not taking into account of the effects

of plaintiff's pain disorder; (3) in discounting her credibility; and (4) in finding her to be capable

of performing other jobs existing in significant numbers in the national economy.  The

undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons

set forth below, recommends that while defendant's decision should be reversed, this matter

should be remanded for further administrative proceedings.

## DISCUSSION

      The determination of the Commissioner of Social Security (the "Commissioner") that a

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been

REPORT AND RECOMMENDATION - 2

applied by the Commissioner, and the "substantial evidence in the record as a whole supports"

that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record.").  "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may its abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

1

2    I.      The ALJ's Evaluation of the Medical Evidence in the Record

3          The ALJ is responsible for determining credibility and resolving ambiguities and

4    conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5    Where the medical evidence in the record is not conclusive, "questions of credibility and

6    resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7    642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8    Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9    whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

10   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

11   within this responsibility." Id. at 603.

12         In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

13   "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

14   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

15   stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

16   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

17   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

18   F.2d 747, 755, (9th Cir. 1989).

19         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

20   opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

21   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

22   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

23   the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

REPORT AND RECOMMENDATION - 4

or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield <u>v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

The record contains a psychological evaluation report completed in mid-April 2010, by Daniel M. Neims, Psy.D., which is the only such evaluation contained therein. <u>See</u> AR 294-302, 307-09.  Indeed, the record is devoid of any other medical opinions regarding plaintiff's mental health condition.  With respect to Dr. Neims's evaluation report, at step two of the sequential disability evaluation process[3] the ALJ found in relevant part:

---

[3] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See id.</u>  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); <u>see also</u> Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR

REPORT AND RECOMMENDATION - 5

The claimant was examined by Daniel [M.] Neims, Psy.D., on April 15, 2010 (Exh. 9F). Dr. Neims conducted an interview of the claimant and administered a number of tests; he had the compact disc of other exhibits from the Social Security Administration. The claimant, he reported, was quite anxious and tentative throughout the interview, and efforts to establish rapport were only partly successful. She presented without neglect or marked oddity of appearance, though she was markedly over her ideal weight. Her grooming was fair to poor, and she had noticeable body odor. She had low eye contact, and sustained a guarded and cautious demeanor. She showed emotional lability and tearfulness, more so as issues of emotional function were breached. Her speech was slow and pressured, and her motor movements appeared slow and tentative. Her speech content was concrete, but logical and lucid. Dr. Neim's initial comment about her test results was that she did not show as malingering on the Rey 15 Factor Test and the MFAST assessment.

The claimant reported something new in her medical history – that her stomach pain had caused her to seek more care than she had reported to Dr. [Virtaj] Singh[, M.D.], and that had revealed an adhesion in her C-section area (she seems to have had 2 C-sections, in 1997 and 2008), and a hernia behind that adhesion – with her doctors declining to do surgery because of her weight. The claimant also reported continuing back pain – and outlined the sense that there was no solution to her ongoing issues. She also reported knee difficulties, which she related to her weight. She did not have high blood pressure or diabetes, and denied almost every other impairment mentioned, though admitting headaches, some 3 times per week and lasting 30 to 60 minutes, and pain in one corner of one eye. She denied drug and alcohol abuse, allowing some rare and infrequent drinking. And she reported having no psychiatric counseling or mental health counseling.

The claimant reported an eventful childhood, witnessing domestic violence from her father on her mother and even on her grandparents, before her mother and father divorced. She reported no contact wither [sic] biological father, and that no one would give her information about him. She had grown up with her mother and a step-father, who had adopted her.

She reported living with a boyfriend, and having done so for 9 years. She denied domestic violence, describing the home as peaceful. She reported a rather low range of daily activities, and a rather sketchy work history. She reported difficulties with sleep onset, attributing this to her chronic pain, and snoring – but she denied the symptoms of sleep apnea, which Dr. Neims thought might be worth considering, given the claimant's build and size. She also reported disturbing dreams, and intrusive memories of her grandparents being assaulted by her biological father, she denied any childhood abuse of

85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).

REPORT AND RECOMMENDATION - 6

her.  When asked about these matters, in investigating post-traumatic stress problems, she quickly diverted the conversation to issues of her chronic pain and her sense of being unheard by her care providers.  She also reported sleeping only 3 to 4 hours per night, and having prominent fatigue in the mornings, with other fatigue, lack of energy and lethargy – with concurrent increases in emotional lability and reduced frustration tolerance, so that sometimes she would just pick up her baby and cry.  She reported variable moods, and highlighted periods of irritability, dysphoria, and anxious arousal; she described periods of insufficient energy, and issues of motivation and frustration.  She also reported periods of anger, including pulling her hair (she denied self-mutilation) and yelling.  She also reported often being anxious about health, and finances and housing, with anxious arousal and associated muscle stress.  She described panic attacks, but with prominent focus on somatic concerns.  She described patterns of checking behavior, and efforts to control her environment.  She described being cautious with others, but denied paranoid ideation and did not show paranoid delusions.  She did not show thought disorder, and did not report hallucinations.

On testing, the claimant showed essentially normal results, though she was a bit slow on calculations and in trail making.  She knew the meaning of only 1 of 3 proverbs.  On the Beck Depression Inventory, she scored in [t]he marked range for depressive symptoms, with the same result in the Hamilton Psychiatric Rating Scale for Depression.  On the Beck Anxiety Scale, she showed in the moderate range, with her anxious arousal in the somatic terms but not in emotional ones.  Still, she high-lighted inability to relax, fears of the worst occurring.  On the Hamilton Psychiatric Rating Scale for Anxiety, she showed in the marked range, with the same result on the Multidimensional Anxiety Questionaire, also showing a strong likelihood of co-morbid dysphoric symptoms.  Other test results were similar, with the claimant showing a [sic] unusual degree of concern about physical function and health matters, and probable impairment arising from somatic concerns.

Dr. Neims reached the following Axis I diagnoses for the claimant: major depressive episode, recurrent, and marked; post-traumatic stress disorder, chronic; and a pain disorder, due to medical and psychological factors.  On Axis II, he also diagnosed the claimant with an avoidant personality disorder, and he assigned her a 50 [global assessment of functioning] GAF [score].[4] He recommended that she would benefit from chronic pain management, and

---

[4] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

needed dietary counseling, as her morbid obesity could cause her to be disabled for her life.

. . .

Though I note Dr. Neim's examination, and I credit his diagnoses for the claimant, I simply note the complete absence of mental health care, even by the claimant's primary care or other physicians. The claimant's mental impairments, I decide, are severe, but impose only a few minor functional limitations.

AR 32-33. Later, when assessing plaintiff's residual functional capacity to perform work-related

activities, the ALJ further found in relevant part:

The claimant's mental residual functional capacity was not evaluated for the state agency, because the claimant did not allege any mental impairment or show any mental health treatment from any source while this proceeding was pending in the state agency.

Only Dr. Neims has made such a statement, in connection with his examination of the claimant (Exh. 9F-15 et seq.). Dr. Neims assesses the claimant as having marked limitations in working in proximity to others, completing normal work days and work weeks, interacting with the general public and accepting supervision, with moderate limitations in [sic] considerable number of other areas.

Dr. Niems' opinion, as a medical expert who has examined the claimant, is entitled to some deference, though not as much as a treating medical source – but only so far as his opinion is supported by medical evidence and is consistent with the other medical and lay evidence . . .

I consider that Dr. Niems' opinion is not consistent with the other medical evidence – and is not supported at all by any medical evidence other than his own examination of the claimant. The claimant, under the care of a number of doctors and other medical care providers, has never, so far as is shown by the medical evidence in the file, been diagnosed by anyone else with any mental impairment, nor has she been referred to any mental health care provider for evaluation of treatment. The claimant has not been prescribed any psychoactive medication by any care provider, so far the medical evidence in the file shows. And there is no other evidence in the file, from anyone but the claimant, which shows the claimant with any mental impairment, much less with especially significant limitations such as Dr. Niems assigns the claimant. I consider the claimant having never sought mental health care before being examined by [Dr.] Neims, and so during the pendency of this proceeding is sufficient evidence which contradicts Dr. Neims [sic] opinion.

REPORT AND RECOMMENDATION - 8

> As to support by medical evidence, again Dr. Neims' examination report is the only medical evidence of the claimant. I simply note that none of the claimant's many treating physicians, and none of the other health care providers, have thought the claimant has any mental impairment nor has any referred her to any mental health care provider.
>
> And all of Dr. Neims' evaluation of the claimant depends on her reports of her symptoms and other manifestations of her mental impairments. And I do not consider the claimant so reliable that I will credit her reports as establishing her as disabled based on mental impairments or even having marked limitations arising from her mental impairments. . . .

AR 35. Plaintiff argues the ALJ erred in rejecting Dr. Neims's evaluation report for these stated reasons. The undersigned agrees.

First, as noted by plaintiff, because that report is not contradicted by any other medical opinion source in the record, it can be rejected only for clear and convincing reasons. See Lester, 81 F.3d at 830. Indeed, the ALJ himself pointed out that Dr. Neims is the only medical source to have assessed plaintiff's mental functional capabilities. See AR 35. The ALJ further pointed out that because Dr. Neims was an examining medical expert his opinion concerning her work-related capabilities was entitled to "some deference." See id.; see also Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (more deference given to opinion of specialist about medical issues related to his or her area of specialty). That deference, though, appears not to have been given to Dr. Neims in this case.

It is true that as an examining medical source, Dr. Neims's opinion is not entitled to as much deference as that of a treating medical source, even though Dr. Neims may be an expert in the field of psychology. As noted above, however, the record contains no opinion on the issue of plaintiff's mental impairments and limitations from a treating medical source. It is also true as again noted above, that the ALJ need not accept the opinion of even a treating medical source if it is inadequately supported "by the record as a whole." Batson, 359 F.3d at 1195. Here, the ALJ

REPORT AND RECOMMENDATION - 9

makes much of the fact that none of plaintiff's treating medical sources diagnosed plaintiff with a mental health impairment or referred her for treatment thereof.

But there is no indication in the medical evidence in the record that any of those treating sources were seeing plaintiff for issues relating to her mental health.  Nor is the fact that they did not notice any problems in that area during the times they saw here necessarily demonstrate that such problems do not exist, but rather may merely indicate that her symptoms were not present or active at those times.  Indeed, there is no requirement that to establish the existence of a severe or disabling mental impairment, symptoms or limitations stemming therefrom must be noticeable during all medical visits no matter the reason for those visits.  This is particularly true where the treatment providers may not be trained in the area of psychopathology, and thus may not be in a good position to observe or recognize them.

The fact that plaintiff herself has not sought or been referred to mental health treatment can be a valid basis for discrediting her credibility regarding her allegations of disability based on mental health impairments.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony"); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment; noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain).  A medical opinion premised on a claimant's complaints, furthermore, may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601.

REPORT AND RECOMMENDATION - 10

The ALJ in this case, however, does not appear to have been aware of the requirement that he "must not draw any inferences" about a claimant's symptoms and their functional effects from a failure to seek treatment, "without first considering any explanations" the claimant "may provide, *or other information in the case record, that may explain*" that failure. SSR 96-7p, 1996 WL 374186 *7 (emphasis added).  Further, the fact that a claimant does "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to discount the accuracy of a medical source's assessment of the claimant's condition, <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996) (noting that those with depression often do not recognize their condition reflects potentially serious mental illness) (citing <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1124 (6th Cir.1989) (holding invalid ALJ's rejection of claimant's assertions concerning depression due to failure to seek psychiatric treatment, finding questionable practice of chastising one with mental impairment for exercise of poor judgment in seeking rehabilitation)).

There is some indication that plaintiff may not have had sufficient insight into her mental health condition to have sought treatment therefor earlier.  For example, Dr. Neims commented as follows in his evaluation report:

> A number of difficulties consistent with a significant depressive experience are reported by [plaintiff].  The quality of [her] depression seems primarily marked by physiological features, such as a disturbance in sleep pattern, a decrease in level of energy and sexual interest, and a loss of appetite and/or weight loss.  However, she does not appear to be reporting a significant degree of dysphoria or thoughts of worthlessness and hopelessness.  This pattern suggests that she *might not recognize* the aforementioned symptoms as signs of dysphoria and stress or *may be repressing* the experience of unhappiness to some extent.

AR 300 (emphasis added).  Dr. Neims went on to comment in relevant part:

> [Plaintiff's] interest in and motivation for treatment is somewhat below average in comparison to adults who are not being seen in a therapeutic setting.  Furthermore, her level of treatment motivation is substantially lower than is typical of individuals being seen in treatment settings.

REPORT AND RECOMMENDATION - 11

Id.  There is no indication that Dr. Neims deemed such lower motivation to be due to secondary gain or other factors reflecting poorly on plaintiff's credibility.  Indeed, as discussed below, the psychological testing Dr. Neims performed suggested the presence of no such behavior.  In his concluding remarks, Dr. Neims further stated that although she presented "with signs and symptoms of depressive illness," plaintiff tended to interpret them "a*s overwhelmingly physiological in nature* and trace[d] many of [her] ongoing problems to unremediated physical; [sic] problems." AR 301 (emphasis added).  The above factors very well could have impeded plaintiff's ability to seek mental health treatment.  At the very least, Dr. Neims's findings here should have caused the ALJ to look into this issue further.[5]

The record also does not support the ALJ's statement that "*all* of Dr. Neims' evaluation" depended on plaintiff's reported symptoms. AR 35 (emphasis in original).  As noted by plaintiff, Dr. Neims conducted a number of psychological tests, which suggested she was in the marked range of depressive symptomatology and in the moderate to marked range of anxiety or anxious arousal. See AR 294, 298-300.  That testing also suggested that her worries and concerns would likely result in her ability to concentrate and attend being "significantly compromised," and that her "[p]hobic behaviors" were "likely to interfere in some significant way in her life." AR 300.  Dr. Neims also performed a mental status examination, which included his own observations of plaintiff's behavior during the evaluation. See AR 297-98; see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D.

---

[5] The ALJ has a duty "to fully and fairly develop the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  This duty to "conduct an appropriate inquiry" is triggered when the evidence is ambiguous or the ALJ finds "the record is inadequate to allow for proper evaluation of the evidence." Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  The suggestion of impaired insight here calls into question the ability plaintiff has to effectively manage her condition – i.e., to seek treatment therefor – and thus creates an ambiguity in the record requiring further development.

REPORT AND RECOMMENDATION - 12

Cal. 2000) (when mental illness is basis of disability claim, clinical and laboratory data may consist of diagnoses and observations of professionals trained in field of psychopathology) (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of mental status examination provide basis for impression of psychiatric disorder, just as results of physical examination provide basis for diagnosis of physical illness or injury).

Thus, although Dr. Neims clearly relied to some extent on plaintiff's self-reporting, it is not at clear he did so more than or to the exclusion of the psychological test results or mental status examination findings or his own personal observations.[6]  It must also be noted that the psychological testing Dr. Neims conducted gave no indication or suggestion of "malingering behavior or atypical symptom dynamics." AR 298.  Dr. Neims, furthermore, found plaintiff had "put forth consistent efforts in the course of the assessment." Id.  In addition, the Ninth Circuit has clearly stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant]'s complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (citing Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir.2001) ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable.")).

---

[6] Plaintiff also points to indications of impaired relations with her medical care providers – including getting upset, engaging in threatening behavior and expressing dissatisfaction with treatment recommendations – as additional evidence of her mental health problem. See ECF #17, p. 19 (citing and quoting AR 286, 290).  Given that Dr. Neims did appear to review plaintiff's medical history (see AR 295), and noted plaintiff "highlighted a sense of frustration and indicated she felt others do not listen to her or her concerns" during the psychological testing he conducted, this too should have been considered by the ALJ in determining the weight to give to Dr. Neims's findings.

REPORT AND RECOMMENDATION - 13

Accordingly, as in <u>Ryan</u>, there is nothing in Dr. Neims's evaluation report "to suggest" he "disbelieved [plaintiff's] description of her symptoms, or that [he] relied on those descriptions more heavily than [his] own clinical observations in reaching" his conclusions concerning her functioning and ability to work. <u>Id.</u> at 1200.  The undersigned also agrees with plaintiff that the ALJ appears to have acted as his own medical expert here, and thus that this constitutes another basis for reversing his rejection of Dr. Neims's opinion.  As noted above, the ALJ stated he was finding plaintiff had severe mental impairments based on Dr. Neims's evaluation of her, but was imposing "only a few minor functional limitations." AR 33.  Although the ALJ did set forth later in his decision what those limitations are – a restriction to simple, repetitive tasks, unskilled work, occasional contact with co-workers and supervisors, and no contact with the general public (<u>see</u> AR 34) – he gave no explanation as to how he determined they were supported by the evidence in the record, but not the more marked ones assessed by Dr. Neims.  As such, it seems the ALJ improperly substituted his own judgment for that of Dr. Neims.[7]

II.     The ALJ's Treatment of Plaintiff's Pain Disorder

In addition to diagnosing plaintiff with a recurrent, marked major depressive episode and a posttraumatic stress disorder, Dr. Neims also diagnosed her with a pain disorder secondary to medical and psychological factors. <u>See</u> AR 301.  While the ALJ found the first two diagnoses to be severe impairments at step two of the sequential disability evaluation process, he did not do so in regard to the pain disorder diagnosis, although he did note Dr. Neims had made that diagnosis. <u>See</u> AR 27, 33.  Plaintiff argues the ALJ failed to consider the effects of this latter diagnosis on

---

[7] <u>See</u> <u>Gonzalez Perez v. Secretary of Health and Human Services</u>, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician); <u>McBrayer v. Secretary of Health and Human Services</u>, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); <u>Whitney v. Schweiker</u>, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony); <u>Gober v. Mathews</u>, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

REPORT AND RECOMMENDATION - 14

her ability to function.  Although plaintiff's argument lacks much in the way of specificity, given that as discussed above the ALJ erred in rejecting Dr. Neims's functional assessment – and that Dr. Neims appears to have based that assessment at least in part on the pain disorder diagnosis (see AR 301, 307-09) – the undersigned agrees the ALJ did not give valid reasons for rejecting those functional limitations Dr. Neims may have based on that diagnosis.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of

physicians and other third parties regarding the nature, onset, duration, and frequency of

symptoms. See id.

The ALJ in this case addressed the issue of plaintiff's credibility as follows:

I have also considered all the claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . .

The claimant's reports of her symptoms begin with assertions of pain (Exh. 3E) and she never changes or adds to that in all her writings.  The claimant's testimony about her symptoms is also of pain – she says she hurts, and does so about 85% of the day, and she takes Tylenol for it, with no prescription medications.  She also testified that her pain affects her sleep, so that she sleeps only 3 or 4 hours per night.

Evaluation of symptoms considers the persistence and intensity and effects of the claimant's symptoms.  Evaluation of symptoms is a 2 step process. First, does the claimant have a medically determinable impairment reasonably likely to cause the complained of symptoms?  Second, does the medical evidence, and then the other evidence support the claimant's reports of symptoms? Evaluation of symptoms necessarily calls for evaluation of the claimant's reliability and credibility.

The claimant's physical impairments, her hernia and, perhaps, adhesions at the site of her Caesarian sections, coupled with her obesity, could reasonably cause her the type of symptoms, of abdominal and back pain, of which she complains, but not, I consider, at the level she asserts.

The medical evidence does not support the claimant's reports of pain at the level she asserts.  She does report abdominal pains to her doctors, and in connection with her recent Caesarian section, with her hernia and the reported adhesions.  She has also reported back pain to her doctors.  And the claimant's doctors have considered surgery for her, but have also considered such surgery would be unsafe so long as she is morbidly obese – the recommendation was for weight loss of 100 lbs.  The claimant has no particular treatment for her reported abdominal or back pain, and she takes only over the counter medications for it.  She has no other treatment for any of her impairments, and no other methods for relief of her symptoms.

As to the claimant's mental impairment, she has no treatment at all from any mental health care provider – nor does she mention any attempts to obtain such care or even counseling, even from community based groups.

REPORT AND RECOMMENDATION - 16

AR 35-36.  The undersigned agrees with plaintiff that these are not clear and convincing reasons for discounting her credibility.

First, the fact that plaintiff's symptom reports consist solely of "assertions of pain" is not alone a valid basis for discounting her credibility, as the ALJ has not explained why any changes or additions to those assertions as a basis for claiming disability reflects poorly on her credibility. On the other hand, as discussed above, a claimant's credibility may be discounted based on failure to seek medical treatment. See Burch, 400 F.3d at 681 (9th Cir. 2005); Meanal, 172 F.3d at 1114 (9th Cir. 1999); Fair, 885 F.2d at 603.  Indeed, plaintiff does not contest the specific fact noted by the ALJ that she has taken nothing stronger than over-the-counter medication for her allegedly disabling pain. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation).  Nor does plaintiff challenge the specific fact also noted by the ALJ that she has not sought mental health treatment for her also allegedly disabling mental health condition.

As discussed above, however, at least with respect to her failure to pursue mental health treatment, the ALJ did not consider whether other factors such as lack of insight may have contributed to such failure.  Accordingly, this stated reason for finding plaintiff to be less than fully credible cannot be said to be clear and convincing at this time.  The undersigned agrees as well with plaintiff that the ALJ's reliance on her lack of more aggressive treatment for her pain also is not supported at this time, given that the pain disorder diagnosis provided by Dr. Neims may account for that lack too.  Dr. Neims, for example, concluded that:

> The claimant appears heavily focused on somatic issues.  The claimant is provided [a] diagnosis of psychological factors affecting physical condition if not better explained by pain disorder.  This is not to say that her physiological

concerns are invalid or feigned, but does point to the interwoven nature of physical and emotional concerns.  These interwoven difficulties are particularly impairing in that psychological issues *hinder needed self care to allow options to resolve medical issues.* . . .

AR 301 (emphasis added).  Dr. Neims further concluded that plaintiff's "[d]iagnostic impression should <u>not</u> be viewed as meaning that her physiological concerns are not present, but suggest [s]ymptoms in excess of those expected by physical assessment may be explainable by psychological factors provided all physiological antecedents are ruled out." <u>Id.</u> (emphasis in original).

IV.   <u>The ALJ's Step Five Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. <u>See id.</u>  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") [SSR] 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. <u>See id.</u>

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>See id.</u>  However, an inability to work must result from the claimant's "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In

REPORT AND RECOMMENDATION - 18

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to:

> . . . perform the exertional demand of sedentary work, that is, she can lift and can carry 10 lbs. occasionally and less than that frequently, with pushing and pulling the same, and she can stand and can walk for 2 hours, and can sit for 6 hours in the usual work day, all with normal breaks. The claimant has non-exertional limitations, in that she must be allowed to change positions from sitting to standing at her will; and she can occasionally crawl, crouch, kneel, stoop, and balance. She can occasionally climb ramps and stairs, but can never climb ropes, ladders or scaffolds. She cannot work with exposure to vibrations, nor can she work with hazards, such as unprotected heights or dangerous moving machinery. She can perform simple repetitive tasks – that is, unskilled work; and she can have occasional contact with supervisors and co-workers, but none with the general public.

AR 34. If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

REPORT AND RECOMMENDATION - 19

1  (citations omitted).  The ALJ, however, may omit from that description those limitations he or

2  she finds do not exist.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

3         At the hearing, the ALJ posed a hypothetical question to the vocational expert containing

4  substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual

5  functional capacity.  See AR 62-64.  In response to that question, the vocational expert testified

6  that an individual with those limitations – and with the same age, education and work experience

7  as plaintiff – would be able to perform other jobs.  See id.  Based on the testimony of the

8
   vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in

9
10 significant numbers in the national economy.  See AR 37.

11        Plaintiff argues the ALJ's step five determination cannot be upheld because it is based on

12 an improper hypothetical question.  The undersigned agrees that in light of the ALJ's failure to

13 properly evaluate the medical evidence in the record and to properly assess plaintiff's credibility,

14
   it cannot be said that the ALJ's assessment of plaintiff's RFC – and thus the hypothetical
15
16 question which is based thereon – are accurate.  Accordingly, the ALJ erred in finding plaintiff to

17 be not disabled at this step.

18 V.     This Matter Should Be Remanded for Further Administrative Proceedings

19        The Court may remand this case "either for additional evidence and findings or to award

20
   benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the
21
22 proper course, except in rare circumstances, is to remand to the agency for additional

23 investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

24 omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

25 unable to perform gainful employment in the national economy," that "remand for an immediate

26 award of benefits is appropriate." Id.

REPORT AND RECOMMENDATION - 20

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Plaintiff argues she should be found disabled at step five of the sequential disability evaluation process, because when some of the mental functional limitations Dr. Neims assessed were presented to the vocational expert, that expert testified that the ability to sustain work would be eliminated. See AR 66-67, 307-09.

Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  "But applying [this 'credit-as-true'] rule is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir.2009)); see also Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Such is the case here.

As discussed above, the ALJ erred in discounting plaintiff's credibility concerning the nature and severity of her subjective complaints on the basis of his failure to consider whether other factors – such as impaired insight – contributed to her lack of medical treatment for her mental and physical impairments and limitations.  But also as discussed above, the evidence in

REPORT AND RECOMMENDATION - 21

the record only *suggests* plaintiff may suffer from such impaired insight.  It does not definitively show she "has essentially *no* insight into the nature and severity of her mental illness" as plaintiff asserts. ECF #17, p. 21 (emphasis added).  Rather, given the importance of plaintiff's credibility in this case – in light of her pain complaints – and the fact that Dr. Neims relied to at least some extent on her subjective self-reports in forming his opinion, further consideration of this issue by the Commissioner along with the other evidence in the record is warranted.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 12, 2013**, as noted in the caption.

DATED this 28th day of March, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22